1
2
3
4
5                    **UNITED STATES DISTRICT COURT**
6                          **DISTRICT OF NEVADA**
7
8    JEFFREY SOFFER, *et al.*,                    )
                                                   )
9              Plaintiffs,                         )      Case No.  2:12-cv-01407-JAD-GWF
                                                   )
10   vs.                                           )      **ORDER**
                                                   )
11   FIVE MILE CAPITAL PARTNERS, LLC, *et al.*,    )      **Motion to Compel and to Extend**
                                                   )      **Discovery Deadline - #56**
12             Defendants.                         )
     _____       )
13

14          This matter is before the Court on Plaintiffs' Motion to Compel and to Extend Discovery

15   Deadline to Complete Discovery (#56), filed on July 15, 2013; Defendants' Opposition to the

16   Motion to Compel (#59), filed on August 1, 2013; and Plaintiffs' Reply in Support of Motion to

17   Compel (#63), filed on August 9, 2013.  The Court conducted a hearing on August 12, 2013.

18                                  **BACKGROUND**

19          Plaintiffs filed suit against the Defendants in the District Court of Clark County, Nevada on

20   July 25, 2012.  Defendant removed the action to this court.  Plaintiffs subsequently filed an

21   amended complaint on August 31, 2012 alleging causes of action for interference with contract and

22   prospective economic advantage, fraud and breach of fiduciary duty.  The Court dismissed

23   Plaintiffs' fraud and breach of fiduciary duty causes of action and limited Plaintiffs' first cause of

24   action to a claim for interference with a prospective contractual relationship.

25          Plaintiffs allege that they developed the Town Square shopping center in Las Vegas,

26   Nevada and obtained a $470 million construction loan from a Senior Lending Group, or Senior

27   Lenders, and a $50 million mezzanine loan to build the development.  Because of the collapse of

28   the financial markets, Plaintiffs were unable to obtain permanent financing to replace the

construction and mezzanine loans which were initially due in March 2008, but were extended to March 2009.  Plaintiffs allege that they entered into a joint venture with Defendants pursuant to which the joint venture would obtain a new $448 million loan from Senior Lenders to replace the construction and mezzanine loans.  The deal contemplated that the Senior Lenders would conduct a "friendly foreclosure" on the deed of trust securing the construction loan and the joint venture would use the new loan to bid on the property at the foreclosure sale.  The foreclosure would eliminate the mezzanine loan.

Plaintiffs allege that Defendants used the joint venture agreement as a means to acquire detailed proprietary business and leasing plans from the Plaintiffs and then steal the property from them.  Defendants allegedly undermined the issuance of the new loan from the Senior Lenders by slowing down the documentation process with the intent to block the loan from closing and by making derogatory and defamatory statements about the Plaintiffs to the Senior Lending Group. The Defendants also purchased an interest in the Senior Lending Group which allowed them to block approval of the new loan to the joint venture.  The Senior Lenders thereafter declined to issue the new loan and instead foreclosed on the deed of trust securing the construction loan on March 4, 2011.  The property was sold at the foreclosure sale to a limited liability company owned by the Senior Lending Group, which included the Defendants who ultimately gained control of the property.

Defendants state that prior to the commencement of this action, they produced 39,364 pages from 6,037 documents in response to a non-party subpoena issued by Plaintiffs in a related Nevada state court action.  Plaintiffs served requests for production of documents on the Defendants in this action on January 18, 2013.  The parties reached agreement as to the list of custodians and search terms for potentially relevant electronically stored information ("ESI").[1]  In response to Plaintiffs' requests for production, Defendants produced an additional 9,734 pages from 1,180 documents. Defendants, however, limited their search for potentially relevant ESI to the time period from

---

[1] The Court infers from the parties' briefs that most, if not all, of the requested documents are contained in electronic data bases.

December 1, 2008 through March 4, 2011, the day of the foreclosure sale. *Motion to Compel (#56), Exhibit 2, Defendants' Response to Document Requests, General Objection D, pg. 2.* Plaintiffs do not contest the beginning date for the search period, but argue that there is no basis to cut off the search for potentially relevant information as of March 4, 2011. Plaintiffs argue that the Defendants should be required to search for and produce relevant documents that may have been created up through the date of their responses to the discovery requests. Prior to the filing of the motion to compel, Plaintiffs made a compromise offer to limit their requests to the period through July 31, 2012, which is "roughly the date Plaintiffs commenced this action." *Motion (#56), Declaration of Christopher Major*, ¶ 9. Plaintiffs also "offered to exclude documents between Defendants and their counsel, such that Defendants could avoid the process of collecting and reviewing those documents altogether." *Id.* Defendants, however, rejected this compromise. As discussed hereafter, Plaintiffs also reportedly modified the search terms or combination of search terms to narrow the scope of the search.

Defendants argue that the cut-off date of March 4, 2011 is reasonable because any electronically stored records relevant to Plaintiffs' claim for interference with a prospective contractual relationship would have been created prior to the foreclosure sale and have been produced to Plaintiffs. Defendants also argue that because they have owned and operated the Town Center development since March 4, 2011, there are numerous electronically stored records that fall within the scope of the agreed search terms, but do not contain information relevant to Plaintiffs' cause of action for interference with a prospective contractual relationship.

Defendants state that they ran an electronic search for documents responsive to the agreed search terms for the period from March 4, 2011 through July 25, 2012 (the date the complaint was filed). This search identified 15,105 documents containing the search terms. *Opposition to Motion to Compel (#59), Declaration of David Fleisher*, ¶ 11. Defendants state that to determine whether any of these documents contain non-privileged relevant information which should be produced, Defendants' lawyers would be required to review all 15,105 documents for relevancy and privilege. Defendants estimate that 240 hours (30 days of 8 hours each) would be required to review the documents and produce any which are relevant. Defendants estimate the cost of this search to be

$78,000, based on an associate lawyer's hourly rate of $325. Defendants argue that the burden of performing such a review is not reasonably justified because it is unlikely to result in the discovery and production of additional relevant documents. Plaintiffs dispute the reasonableness of Defendants' estimate, but do not offer an alternative estimate. Plaintiffs' counsel stated during the hearing, however, that Plaintiffs would be willing to contribute to the reasonable cost of reviewing the subject documents to identify any which are relevant and should be produced.

Following the hearing, and at the Court's request, Defendants provided the Court with the list of search terms used by the parties. The list appears to consist primarily of names of individuals or entities and combinations of words by use of the connectors *"or"* or *"and"* which is referred to as a "Boolean Search." Among the search terms listed are "'Town Square'/ 'Town Sq'/ TS/ 'Town Mall'/ TSLV / TS." *See August 15, 2013 Letter from Defendant's Counsel, Docket Entry #67.* The Court also received an August 16, 2013 letter from Plaintiff's counsel, *Docket Entry #68,* which states that prior to filing the motion to compel, Plaintiffs "proposed to remove the Town Square search terms (*"'Town Square'/ 'Town Sq'/ TS/ 'Town Mall'/ TSLV / TS"*) as stand-alone terms, and run them only in conjunction with litigation specific terms (*"Earl"* OR [*"Nevada* AND *'judge'*] OR [*'vegas'* AND *'judge'*] AND ['court or vegas or LV' or [one of the Town Square search terms]) for all documents created after May 31, 2011." *Docket Entry #68.* The terms "judge" and "Earl" apparently refer to Nevada District Judge Allan Earl who presided in a related proceeding.

It does not appear that Defendants' search of post-March 4, 2011 ESI, which resulted in the identification of 15,105 documents, was performed with modified or restricted search terms that Plaintiffs' counsel state they proposed to Defendants. Such a modified search would likely result in smaller number of potentially relevant documents, although the extent of the reduction is unknown until the modified search is run.

## DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevancy is broadly construed. As stated in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

351, 98 S.Ct. 2380 (1978) relevancy includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *See also Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D.Cal. 1992); *Renfrow v. Redwood Fire & Cas. Ins. Co.*, 288 F.R.D. 514, 521 (D.Nev. 2013). The relevant time period for which a party may be required to search for and produce documents depends on the facts and circumstances of the particular case. The date by which a defendant's allegedly wrongful conduct was complete does not necessarily preclude discovery of information or documents created after that date. *See In re Control Data Corp. Securities Litigation*, 1988 WL 92085, *3 (D.Minn. 1988) ("There are numerous instances in securities fraud litigation where post-offering statements, documents, or conduct have been treated as admissible evidence on the issue of scienter, intent, and knowledge.") On the other hand, communications and documents that occurred or were created after the completion of the events in issue are probably less likely to contain relevant information than those which occurred or were created while the events were taking place.

The decision on this motion ultimately turns on the balancing test in Rule 26(b)(2)(C)(iii) which provides that the court must limit the extent of discovery otherwise allowed if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation and the importance of the discovery in resolving the issues. Plaintiffs do not assert that they are unable, or are somehow impaired in their ability, to prove their case against Defendants based on the information they have already obtained, including the documents that Defendants have produced up through the date of the foreclosure sale. Plaintiffs have not identified any specific transactions or events that occurred after the foreclose sale which leads them to believe that relevant nonprivileged communications and documents after March 4, 2011 exist. Instead, Plaintiffs apparently want to make sure that nothing relevant is missed by requiring Defendants to search and review their post-March 4, 2011 ESI for relevant documents.

Plaintiffs' assertion that the 15,105 documents identified by Defendants' use of search terms are "presumptively relevant" is, at best, debatable. The search terms and combination of search terms provided to the Court do not appear to be particularly precise. While the use of

relatively broad search terms for the time period prior to the foreclosure sale was reasonable to ensure that all relevant communications and documents were captured, this does not hold true in the post-foreclosure period.   This is particularly true in light of Defendants' undisputed representation that they have operated Town Center since March 4, 2011 and have engaged in communications and dealings with the individuals or entities identified in the search terms which have nothing to do with Defendants' alleged conduct prior to the foreclosure.

Although the estimated cost of reviewing the post-March 4, 2011 ESI is substantial, Defendants have substantial financial resources to bear such costs.  Plaintiffs have also stated a willingness to share the expense.  The cost of production is therefore not a determinative factor in deciding this motion.

Resolution of this discovery dispute does not necessarily require a choice between ordering Defendants to review all 15,105 documents or denying Plaintiffs' request for any discovery of post-March 4, 2011 ESI.  As the information in Plaintiffs' August 16, 2013 letter suggests, the reasonable solution may be for the parties to work together to further refine and narrow the scope of search terms and combinations thereof to identify post-March 4, 2011 documents that are more likely to be relevant.  It is possible that the restrictions and modifications set forth in Plaintiffs counsel's August 16th letter will result in a smaller number of potentially relevant documents that require further review for relevancy and privilege.  The Court directs that Plaintiffs' and Defendants' counsel, together with their technical experts, consult on a revised search of the post-March 4, 2011 ESI which should be directed at a more focused initial search designed to identify a smaller universe of potentially relevant documents for manual review.  The Court will limit the time period covered by such search to the period from March 5, 2011 through July 25, 2012 (the date that Plaintiffs filed their original complaint.)  As part of their discussions, the parties should also negotiate a reasonable cost sharing agreement for conducting the search and review for relevant documents.  Although the cost of production is generally born by the producing party, *Lightguard Systems, Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 606 (D.Nev. 2012), the Court will consider allocating an appropriate share of the costs of production to Plaintiffs once a determination of the cost is made.

If the parties are unable to agree on a limited search for and production of relevant post-March 4, 2011 documents in accordance with this order, then Plaintiffs may renew its motion to compel, subject to demonstrating to the Court that it has developed a search protocol that is more likely to identify relevant post-March 4, 2011 documents.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Motion to Compel and to Extend Discovery Deadline to Complete Discovery (#56) is **denied**, without prejudice.

DATED this 19th day of August, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge